## THE MUSCOOTA.

### VAN SANT v. MUSCOOTA NAV. CO. (UNITED STATES, Intervener).

(Circuit Court of Appeals, Ninth Circuit. December 13, 1926.)

No. 4837.

War ⬥12—Contract for sale of interned German vessel held not to have passed title to purchaser prior to taking of possession by President.

Where, under a contract for cash sale of an interned German vessel, made in February, 1917, a one-day note for the purchase price and a bill of sale were deposited in escrow until the purchaser should be satisfied with the title, and a decree for specific performance was obtained, but the bill of sale was never delivered, nor payment made, the purchaser *held* not to have acquired title prior to the executive order of the President of June 30, 1917, taking possession of German vessels, which would support a suit by him for possession.

Appeal from the District Court of the United States for the Southern Division of the Northern District of California; Adolphus F. St. Sure, Judge.

Suit in admiralty by Robert H. Van Sant, Jr., against Muscoota Navigation Company, claimant of the bark Muscoota, in which the United States intervened. From a decree dismissing the libel, libelant appeals. Affirmed.

At the outbreak of the World War, in 1914, the bark Ottawa, under German registry, flying the German flag, and owned by a German corporation, entered the port of San Francisco and was there voluntarily interned to avoid capture on the high seas. November 21, 1916, the German owner appointed one Orrisch attorney in fact; the power of attorney, signed by one Dahlstroem and the corporate name, providing as follows:

"I hereby appoint Mr. M. W. Orrisch my general attorney in fact, and empower him to transact all my business. He is authorized to do every kind of legal business and transaction which I could perform personally, and which may legally be done by an attorney in fact in my place and stead, and with the same effect as if I had done the transaction personally. The above power of attorney is limited to legal transactions in connection with the ship Ottawa, and shall be null and void on the day of the declaration of peace."

February 7, 1917, Robert H. Van Sant, Jr., and Orrisch, the attorney in fact, entered into the following escrow agreement, addressed to the American National Bank:

"Gentlemen: We hand you herewith the note of R. H. Van Sant, Jr., for $110,000, dated February 7, 1917, and payable one day after date. We also hand you bill of sale from M. W. Orrisch to R. H. Van Sant, Jr., of the barkentine Ottawa, together with copy of German registry of the boat taken from the ship's papers. Upon notification to you by R. H. Van Sant, Jr., that he is satisfied with the title to said barkentine Ottawa, and that he can obtain American registry for the vessel and is ready to consummate the transaction, the undersigned, M. W. Orrisch, will immediately cancel the German registry of the said vessel, and upon notification to you by R. H. Van Sant, Jr., that this has been done, you will deliver the bill of sale and canceled German registry to R. H. Van Sant, Jr., and from the proceeds of the attached note place $90,000 to the credit of Hamburg Rhederei Actien Gesellschaft of 1896, for transfer to them, and $20,000 to the credit of M. W. Orrisch. If transaction is not consummated within 90 days, documents to be returned to makers by you."

Van Sant never notified the bank that he was satisfied with the title to the bark, that he could obtain American registry therefor, or that he was ready to consummate the transaction, although the escrow agreement was extended for two periods, of 30 days each.

May 12, 1917, Congress by joint resolution

authorized the President to take over to the United States the immediate possession and title of any vessel within the jurisdiction thereof, which at the time of coming into such jurisdiction was owned in whole or in part by any corporation, citizen, or subject of any nation with which the United States may be at war when such vessel shall be taken, or was flying the flag, or which was under the registry, of any such nation, or any subdivision or municipality thereof.

May 15, 1917, Van Sant commenced an action for specific performance in a state court of California against the German owner and Orrisch, the attorney in fact—the complaint alleging that on February 7, 1917, the plaintiff and defendants entered into an agreement wherein and whereby the defendants agreed to sell and the plaintiff agreed to buy the bark in question for the sum of $110,000, $90,000 payable to the German owner and $20,000 to Orrisch, the attorney in fact; that the plaintiff was ready, able, and willing to perform the contract on his part, and that the defendants refused to perform. On the same day an answer was filed, findings of fact and conclusions of law were made, and a final decree was entered in accordance with the prayer of the complaint. The final decree appointed one Manders, as commissioner, to execute a bill of sale on behalf of the German owner, and on the date of his appointment the commissioner executed the bill of sale and filed it for record in the clerk's office.

June 30, 1917, the President, by executive order, through the United States Shipping Board, took over the possession and title of a large number of vessels, including the bark in question. June 10, 1918, Van Sant and Orrisch, by letter, directed the American National Bank to deliver the Van Sant note, the Orrisch bill of sale, and the escrow agreement to Manders, the commissioner who executed the bill of sale. This letter recited:

"If and when Van Sant shall have the lawful possession of said bark Ottawa, and upon receipt of $110,000, in payment of said note, you will hold $90,000 of said sum for Rhederei Actien Gesellschaft, subject to the orders of the United States government, and pay to said Orrisch $20,000 of said sum, and deliver said bill of sale and escrow instructions to said Van Sant."

On the foregoing facts the present libel was filed, to establish title to and recover possession of the bark, and from a decree of dismissal this appeal is prosecuted.

F. Eldred Boland, Knight, Boland, Hutchinson & Christin, and Knight, Boland & Christin, all of San Francisco, Cal., for appellant.

Geo. J. Hatfield, U. S. Atty., Frank Maytham, Asst. U. S. Atty., both of San Francisco, Cal., and Arthur M. Boal, Admiralty Counsel U. S. S. B., and F. R. Conway, Admiralty Atty. U. S. S. B., both of Washington, D. C., for appellees.

Before GILBERT and RUDKIN, Circuit Judges, and JAMES, District Judge.

RUDKIN, Circuit Judge (after stating the facts as above). Upon the foregoing facts two questions arise: First, did the appellant acquire title to the bark prior to the executive order of June 30, 1917; and, second, if so, could he acquire a valid title as against the United States, through judicial proceedings instituted in a state court, after the adoption of the joint resolution by Congress, and before the date of the executive order? If the first question is answered in the negative, a consideration of the second question becomes unnecessary.

It seems quite apparent to us that the appellant has never acquired title to the bark. A sale on credit was at no time contemplated by the parties. While a one-day note was deposited in escrow, the escrow agreement itself provided that, upon delivery of the bill of sale and the canceled German registry, the bank should place $90,000 of the proceeds of the sale to the credit of the German owner for transfer to it, and $20,000 to the credit of Orrisch. This shows very clearly that cash was to be substituted for the note before the contract was finally consummated. Furthermore, the complaint in the action in the state court made no reference to a sale on credit, and the final decree directed the commissioner to execute and deliver to the appellant, on behalf of the German owner, a good and sufficient conveyance of the bark and to deposit the purchase price thereof, to wit, the sum of $110,000 in a depositary to be selected by the government of the United States to be there held subject to its order.

This shows very clearly that the delivery of the bill of sale and the payment of the purchase price in cash were to be concurrent acts. No consideration was in fact paid to or received by the commissioner at the time of the execution of the bill of sale. Indeed, there was no consideration paid at any time, aside from the promissory note of February 7, 1917, and that did not find its way into the hands of the commissioner until more than a year after the alleged sale took place. The letter to the commissioner of June 10, 1918, shows very clearly that even at that late day

the sale had not been consummated. Furthermore, the commissioner testified that the bill of sale executed by him was never delivered to the appellant. There was no testimony to the contrary, and such an abuse of trust or duty on his part will not be presumed.

For these reasons the appellant utterly failed to establish either title or right of possession, and the decree is therefore affirmed.